IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Vishal Goel and Peeush Goyal, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 07-1034 ) |
| Patni Computer Systems, Inc. | ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court on Defendant's motion to dismiss Plaintiffs' First Amended Complaint. For the reasons below, the Court recommends that Plaintiffs' claim for conversion be dismissed for failure to state a claim. The Court otherwise recommends that the motion to dismiss be denied.

**Procedural Background**

Plaintiff Goel filed this lawsuit in McClean County Circuit Court against his former employer, Patni Computer Systems, Inc.. Patni removed the case to federal court based on diversity jurisdiction and filed a

motion to transfer venue, which was denied. (Judge McDade's 6/13/07 Order, d/e 22). Discovery was stayed pending a ruling on Defendant's motion to dismiss the original complaint. (11/5/07 text order). In December 2007 this Court granted Plaintiff Goel leave to file a First Amended Complaint, mooting Defendant's motion to dismiss the original Complaint. (12/10/07 text order, First Amended Complaint, d/e 39). Defendant then filed a motion to dismiss the First Amended Complaint (d/e 39), the motion now before the Court. Discovery remains stayed pending a ruling on that motion. (1/23/08 text order).

### Allegations in the First Amended Complaint

The First Amended Complaint adds a new plaintiff, Peeush Goyal, along with allegations specific to Goyal's situation and allegations regarding events that occurred after the filing of the original complaint. Many of the allegations below were already summarized in the Court's prior opinion on venue but are repeated here to provide the necessary context.

Defendant Patni Computer Systems, Inc. ("Patni") is a Massachusetts corporation with its principal place of business in Massachusetts. (Notice of Removal, d/e 1, ¶ 5). Patni is a wholly owned subsidiary of Patni

Computer Systems, Ltd., a company organized under the laws of the Republic of India.[1]  Plaintiffs are citizens of India.

In January 2004, Patni employed Plaintiffs "in H-1B nonimmigrant status" to provide computer consulting for State Farm Mutual Automobile Insurance Company in Bloomington, Illinois.  (First Amended Complaint ¶¶ 13, 19).  To qualify Plaintiffs for H-1B status, Patni was required to and did file petitions for H-1B status for approval by the United States Immigration and Citizenship Services.  (First Amended Complaint ¶ 59).  Part of this procedure required Patni to submit "Labor Condition Applications" to the U.S. Department of Labor on which Patni stated the wages it would pay to Plaintiffs.  (First Amended Complaint ¶ 59).   Under the Immigration and Nationality Act, H-1B employees must be paid the prevailing local wage or

---

[1] For diversity purposes, the citizenship of a parent company generally is not attributed to its wholly owned subsidiary, absent a showing that the subsidiary is merely an "alter ego" of the parent.  Fedproc Section 1:116 (Westlaw); CIGNA HealthCare of St. Louis, Inc. v. Kaiser, 181 F.Supp.2d 914, n. 8 (N.D.Ill.,2002).  There are no such allegations here.  Accordingly, Patni Computer Systems, Inc., is considered a citizen of its state of incorporation (Massachusetts) and its principal place of business (Massachusetts).  Kanzelberger v. Kanzelberger, 782 F.2d 774, 777 (7th Cir. 1986). Thus, Plaintiffs are citizens of a foreign state (India) and Patni is a citizen of a domestic State (Massachusetts).  28 U.S.C. Section 1332(a)(2).  As for the jurisdictional amount, Plaintiffs' claim for punitive damages is considered in that computation because punitives cannot be ruled out "beyond a legal certainty."  Anthony v. Security Pac. Fin. Servs. Inc., 75 F.3d 311, 315 (7th Cir. 1996)(if uncontested, good faith allegation of amount in controversy accepted); see also Clark v. State Farm Mut. Auto. Ins. Co., 473 F.3d 708, 711 (7th Cir. 2007)(jurisdictional amount is "determined by the district court at beginning of case, and is not dependent on subsequent dismissal of individual claims used to satisfy the jurisdictional amount.")(citations omitted).

the actual wage, whichever is greater, in order to eliminate any economic advantage to hiring foreign workers. (First Amended Complaint ¶ 18).

Patni stated that it would pay Plaintiff Goel $44,000 per year in its Labor Condition Application ("LCA"). Patni sent this LCA to Goel with an accompanying letter stating that Goel was being reassigned to work for State Farm in Bloomington and that there was no adjustment in the wage, since it was already "at or above the required wage." (First Amendment Complaint ¶ 60 and Ex. 2). However, Patni paid Goel significantly less than $44,000 per year during the time Goel worked at State Farm (all of 2004 and January through March 16, 2005), failed to pay him for overtime and accrued leave, wrongfully deducted amounts from his salary, and failed to pay him a promised termination bonus.

In May 2005, Goel found other employment in California, where he currently resides. After securing that new employment, Goel began making requests to Patni for the money owed him for his work in 2005. (First Amended Complaint ¶ 87).[2] Patni officials refused, instead labeling Goel as an "absconder" and demanding "bond." (First Amended Complaint ¶¶

---

[2]It is not clear if Goel asked for the amounts owed him for 2004. He alleges that he did not bring up the difference between his wage and the prevailing wage for fear of retribution, but later alleges that Patni told him to drop that issue or face retribution (First Amended Complaint paras. 87, 89).

54, 84).  A Patni executive allegedly warned Goel to drop the issue or face trouble in his new job and harassment of his parents in India.  (First Amended Complaint ¶ 88).  In July/August 2005 a Patni executive again threatened Goel that his "parents in India would be harassed by individuals at the request of Patni if Goel did not drop the issue of the LCA and W-2 discrepancy and pay 'bond' money to Patni."  (First Amended Complaint ¶ 89).  In October 2005, Patni offered to pay Goel $2,600.29 if he signed a release.  Goel refused.

For the tax year 2005, Patni falsely reported to the IRS over $13,000 in wages paid to Goel, despite the fact that Goel was actually paid only about $6,600, and despite the fact that Goel had repeatedly informed Patni that its W-2 overstated his wages.  Patni finally issued a correct W-2 to Goel in June 2006 but did not correct its report to the IRS.  Thus, Goel received a letter from the IRS informing him that he owed taxes and interest on the $13,000.  (First Amended Complaint ¶ 105).

In June 2007, after Plaintiff Goel filed this case, the U.S. Department of Labor issued a news release reporting that Patni had agreed to pay more than $2.4 million to non-immigrant workers as a result of a DOL investigation which concluded that Patni had not paid its H-1B computer

consultants the required wages from January 2004 to December 2005. (First Amended Complaint ¶¶ 43-44). Goel refused to accept the amount of money he was offered as a result of that investigation, finding it far less than what he was owed. (First Amended Complaint ¶ 51).

In November 2007, the First Amended Complaint was filed in this action, adding Peeush Goyal as a plaintiff. Plaintiff Goyal is a resident of India and also worked for Patni as a computer consultant for State Farm on H-1B status. Goyal alleges that he did receive a payment from Patni as a result of the DOL investigation, apparently for the years 2004-05, but not for 2003. (First Amended Complaint ¶ 52). Goyal alleges that he refused to sign the Department of Labor form WH-58.[3] (First Amended Complaint ¶¶ 52-53). Goyal does not appear to be pursuing amounts owed him in 2004-05. He appears to seek only amounts due him from June 30, 2003 to December 31, 2003. Like Plaintiff Goel, he alleges that he was underpaid during this period because he was not paid as promised and that improper deductions were taken from his salary.

Goel and Goyal also maintain that Patni required them to sign, under duress, a limited power of attorney giving Patni the right to "receive,

---

[3]This form is titled "Receipt for Payment of Lost or Denied Wages, Employment Benefits, or Other Compensation."

endorse and deposit" for Patni's benefit any tax refunds due Plaintiffs personally. (Complaint ¶61-65).[4]

## Analysis

Plaintiffs pursue three common law counts based on the allegations above: 1) common law fraud; 2) conversion; and, 3) unjust enrichment.

**I. Federal Preemption**

Patni moves to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), but its preemption argument is actually an affirmative defense. Fifth Third Bank ex rel. Trust Officer v. CSX Corp., 415 F.3d 741, 745 (7th Cir.2005)("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof.")(citation omitted). Like a 12(b)(6) argument, though, the Court accepts the factual allegations as true, to the extent facts are necessary to resolve the preemption issue.

Patni asserts that Plaintiffs' common law claims are really actions to recover for Patni's violations of § 1182(n) of the Immigration and Nationality Act. Patni contends that Plaintiffs are trying to assert a private right of action under § 1182(n) and trying to bypass the exclusive remedies set forth in that section and its accompanying regulations. Patni concludes

---

[4]It is not clear if Plaintiffs are alleging that Patni actually wrongfully received any tax refunds due them personally.

that "Plaintiffs' claims are nothing more than an assertion that they disagree with the amount the DOL determined Patni owed them."  (d/e 40 p. 10).

The pertinent section of the INA, 8 U.S.C. § 1182(n)(1)(A), permits H-1B status for a nonimmigrant employee only if the employer files an LCA stating that it will pay that nonimmigrant employee at least what it pays other employees with like experience or the prevailing wage in the area, whichever is greater.  If the employer misrepresents material facts or fails to meet the conditions promised in the LCA, "any aggrieved person" may file a complaint within 12 months.  8 U.S.C. § 1182(n)(2)(A).  The DOL investigates the complaint and issues a determination, which the aggrieved person can appeal to an Administrative Review Board.  The Board's decision is ultimately reviewable in a district court on a complaint for review of a final agency action.  *See*  20 C.F.R. §§ 655.806--655.850.

Plaintiffs counter that they are not pursuing claims for violations of § 1182.  They assert that their common law claims are based on Patni's fraudulent scheme to induce Plaintiffs to move to Bloomington to work by promising to pay them amounts that it never intended to pay and in fact did not pay.

At this stage of the litigation the Court agrees with Plaintiffs. Their common law claims are not premised on violations of § 1182, though the allegations also state a claim for violations of § 1182(n). Plaintiffs' common law claims are premised on Patni's knowingly false promises. That Patni communicated those false promises to Plaintiffs in part through LCAs does not shield it from common law claims. The fact that the misrepresentations were made on an LCA form simply adds an additional or alternative remedy under § 1182. This is not a conflict. The same factual scenarios often give rise to different federal and state remedies, each representing different theories of recovery based on the same set of facts, and each with its own set of procedural hoops and applicable law.[5] The LCA is simply evidence in support of Plaintiffs' common law claims.

Nor has Patni met its burden of showing that the INA preempts these common law claims.

> Preemption can take on three different forms: express preemption, field preemption, and conflict preemption. . . . . "Express preemption occurs when a federal statute explicitly states that it overrides state or local law." . . . As for field preemption, it exists "when federal law so thoroughly 'occupies

---

[5] Additionally, Patni does not address the allegations about the promised termination bonus, unpaid overtime and power of attorney signed under duress, which are not based on the LCA.

> a legislative field' as to make it reasonable to infer that Congress left no room for the states to act." . . . [C]onflict preemption, . . . "exists if it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"

Aux Sable Liquid Products v. Murphy, — F.3d —, 2008 WL 2080760 *3 (7th Cir. 2008)(internal cites and quoted cites omitted).

Patni does not argue for express preemption. Patni may be asserting implied preemption by its reference to the Supreme Court's observation that "[t]he central concern of the INA is with the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in this country." De Canas v. Bica, 424 U.S. 351, 359 (1976). However, the Supreme Court in De Canas held that the INA did *not* preempt California regulations governing the employment of illegal aliens. De Canas observed that nothing in "the wording or legislative history of the INA [indicated] that Congress intended to preclude even harmonious state regulation touching on aliens in general, or the employment of illegal aliens in particular." 424 U.S. at 358. De Canas involved illegal aliens and a state regulation, but its analysis is applicable here. Like De Canas, Patni points to nothing in the INA that shows an intent to preclude harmonious state common law.

Patni also seems to argue for conflict preemption, asserting that "[e]ven without an express provision for preemption, state law must yield to a congressional Act when state law conflicts with a federal statute." (d/e 40, p. 5). Patni contends that "[t]here can be no doubt that Congress intended to preempt state laws inconsistent with the INA, including the specific issues and enforcement mechanisms addressed in § 1182(n) of that Act." Id.

Yet Patni does not explain how the state claims here conflict with the INA generally or with § 1182(n) and its accompanying regulations in particular. All the cases Patni cites hold, unsurprisingly, that plaintiffs expressly pursuing claims for violations of § 1182 must follow the procedure set forth in the accompanying regulations, rather than pursuing a private right of action in district court. See, e.g., Venkatraman v. REI Systems, Inc., 417 F.3d 418, 422 (4th Cir. 2005)(plaintiff sought to pursue claim for violation of § 1182(n) directly in district court); Shah v. Wilco, 126 F.Supp.2d 641, 648 (S.D.N.Y. 2000)(same). As discussed above, Plaintiffs are not pursuing claims under § 1182. None of the cases cited by Patni addresses whether state law claims arising from, or related to, conduct that also violates the INA are preempted. In fact, some of those cases address

supplemental state claims on their merits, which cuts against preemption. *See* Venkatraman, 417 F.3d at 422 and n. 4 (affirming dismissal of state law claims of retaliatory discharge and infliction of emotional distress on merits); Shah, 126 F.Supp.2d 641, 652-53 (S.D.N.Y. 2000)(dismissing breach of contract claim without prejudice); *see also* Shah, 2001 WL 1006722 (S.D.N.Y. 2001)(addressing state law and other claims in subsequent order). State common law and the INA do not conflict here.

Further, accepting Defendant's argument for preemption would limit H-1B workers to the remedies under § 1182, regardless of an employer's tortious conduct, so long as the misconduct also violated § 1182. Elimination of potential tort remedies for H-1B workers would give employers an economic incentive to hire H-1B workers over domestic workers.[6] For example, a domestic worker fraudulently promised a salary and benefits would have a potential tort action; an H-1B worker would not. That is exactly the kind of incentive the INA seeks to eradicate.

---

[6] Unlike a claim under Section 1182, the common law fraud claim here does not require exhaustion of administrative remedies and carries with it the possibility of punitive damages. Under the regulations, an employee must file within 12 months, exhaust administrative remedies, and is limited to recovering the difference between the wages and benefits required and those paid. 20 C.F.R. Section 655.810(a). The regulations do allow for civil penalties, but those are paid to the Wage and Hour Division office, not to the employee. 20 C.F.R. Section 655.810(f).

## II.  Failure to State a Claim

Federal notice pleading standards apply to state law claims in diversity actions.[7]  Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 863 (7th Cir. 2002).  To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted). However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' . . . ." Id., *quoting* Bell Atlantic, 127 S.Ct. at 1965, 1973 n. 14. "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" Killingsworth v. HSBC Bank Nevada, 507 F.3d 614, 618 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1974.

---

[7]The parties do not dispute that Illinois law applies to the state law claims.

### A. Common Law Fraud

Patni argues that no claim for fraud lies because the alleged fraudulent statement (the amount Patni promised to pay) was not a "fact" but instead only a promise of what Patni intended to do in the future.

> Promissory fraud is generally not actionable in Illinois, but there is an exception to this rule "where the false promise or representation of intention of future conduct is the scheme or device to accomplish the fraud." . . . This exception is broad, and has even been viewed as swallowing the rule barring promissory fraud actions. . . . The scheme exception applies where "a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to his detriment."

Bower v. Jones, 978 F.2d 1004, 1011 (7th Cir. 1992)(citations omitted). "In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent-a scheme or device. . . . .If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed." Id. at 1012; see, e.g., Kamboj v. Eli Lilly and Co., 2007 WL 178434 (N.D. Ill. 2007)(not reported in F.Supp.)(claims of promissory fraud and breach of oral contract survived summary judgment where plaintiff was promised specific title and salary increase and

moved to Chicago in reliance on those promises; inferences existed that knowingly false "misrepresentations and lulling statements" were made).

Patni does not discuss this exception. The Court believes its motion to dismiss is deniable on that basis alone. In any event, the allegations do allow an inference that Patni perpetrated a scheme of promising salary and other benefits to Plaintiffs in order to induce their move to Bloomington, promises it never intended to keep. Accordingly, the Court believes the fraud claim should survive dismissal at this early stage. A developed factual record may show otherwise.

### B. Conversion

The Court agrees with Patni that Plaintiffs fail to state a claim for conversion. The Seventh Circuit explains conversion as follows:

> " 'The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held.' " In re Thebus, 108 Ill.2d 255, 91 Ill.Dec. 623, 483 N.E.2d 1258, 1260 (1985), *quoting* Bender v. Consolidated Mink Ranch, Inc., 110 Ill.App.3d 207, 65 Ill.Dec. 801, 441 N.E.2d 1315, 1320 (1982); *see also* National Union Fire Ins. Co. of Pittsburgh, Pa. v. Wilkins-Lowe & Co., 29 F.3d 337, 340 (7th Cir.1994) (per curiam). An asserted right to money normally will not support a claim for conversion. Only if the money at issue can be described as "specific chattel," Thebus, 91 Ill.Dec. 623, 483 N.E.2d at 1260-in other words, "a specific fund or specific money in coin or bills," Mid-America Fire & Marine Ins. Co. v. Middleton, *supra*, 82 Ill.Dec. 555, 468 N.E.2d at 1339-will conversion lie. Moreover, the plaintiff's right to the

money must be absolute. *See* Thebus, 91 Ill.Dec. 623, 483 N.E.2d at 1260, *quoting* Jensen v. Chicago & W. Ind. R.R. Co., 94 Ill.App.3d 915, 50 Ill.Dec. 470, 419 N.E.2d 578, 593 (1981). "It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." Thebus, 91 Ill.Dec. 623, 483 N.E.2d at 1261 (emphasis supplied); *see also* National Union Fire Ins. Co., 29 F.3d at 340.

Horbach v. Kaczmarek, 288 F.3d 969, 978 (7th Cir. 2002)(manufacturer's refusal to return purchaser's money was not action for conversion). Thus, money may be the subject of a conversion action, but the claim must be based on more than a "mere obligation to pay money." Thebus, 108 Ill.2d 255, 260 (1985). The money at issue "must be capable of being described as a specific chattel, although it is not necessary for purposes of identification that money should be specifically earmarked." Id. at 259; *see, e.g.,* Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc., 346 Ill.App.3d 996 (2d Dist. 2004)(sales commissions transferred to defendant from outside source were proper subject of conversion action).

Plaintiffs allege that they were not paid for their work as promised. That is a claim that Patni has an obligation to pay them money from its own funds, not that Patni is withholding a sum of money that has always belonged to Plaintiffs, or that was transferred to Patni from an outside source, or that is otherwise capable of being identified as specific property.

That Plaintiffs' salaries were for a specified amount does not change the conclusion.  *See* Payton v. County of Kane, 301 F.Supp.2d 835, 839 (N.D. Ill. 2004)("Simply placing a specific dollar amount on the money in question is not sufficient to make it a 'specific fund.'").  The amounts sought still represent "mere obligations to pay money."  Accordingly, the Court will recommend that the conversion action be dismissed for failure to state a claim.

### C.  Unjust Enrichment

Patni argues that a claim for unjust enrichment cannot be stated because an express employment contract existed between Patni and Plaintiffs based on the LCAs.  Plaintiffs deny that the LCA constituted an express contract and disavow the existence of any "valid express signed contract."  (First Amended Complaint, ¶¶ 140)("Despite the absence of a valid express signed contract governing the employment relationship between Goel and Patni, Goel is entitled to the value of the services he performed.")

Plaintiffs' allegations do seem to fit better into a breach of contract claim, if not based on an express contract, then based on a contract implied in fact.  Illinois cases generally discuss two kinds of implied

contracts: 1) a contract implied in fact, and 2) a contract implied in law. A contract implied in fact "arise[s] from a promissory expression that is inferred from circumstantial evidence of an intent to be bound." Heavey v. Ehret, 16 Ill.App.3d 347,354 (1st Dist. 1988); Wood v. Wabash County, 309 Ill.App.3d 725, 727 (5th Dist. 1999)("An implied-in-fact contract exists when a promissory expression may be inferred from the facts and circumstances and the expressions on the part of the promisor."). Here, Plaintiffs allege that Patni made express salary promises in its communications to them.

In contrast, an unjust enrichment claim is an equitable claim based on a contract implied in law, also known as a quasi-contract. *See* Heavey v. Ehret, 16 Ill.App.3d 347,355 (1st Dist. 1988). This equitable claim arises when no contract exists. "No claim on a contract implied in law can be asserted if an express contract or a contract implied in fact exists between the parties and concerns the same subject matter, . . . ." Id.; *see also* Wheeler-Deeler, — N.E.2d —, 2008 WL 598441 *6 (1st Dist. 2008)(unjust enrichment claim is based on contract implied in law and has no application where a contract does exist).[8] Unjust enrichment and breach of contract

---

[8]Generally, punitive damages are not recoverable on claims for breach of contract. Morrow v. L.A. Goldschmidt Associates, Inc., 112 Ill.2d 87, 98-99 (1986). The conduct must give rise to a tort independent of the breach of contract. Id.

claims may be asserted in the alternative if properly pled, but Plaintiffs do not plead in the alternative. See Guinn v. Hoskins Chevrolet, 361 Ill.App.3d 575, 604 (1st Dist., 2005).

Although it is difficult to understand Plaintiffs' unjust enrichment theory of recovery, the Court cannot conclude with certainty from the allegations alone that no unjust enrichment claim lies. In the Court's opinion, determining whether the claims lie in breach of contract (express or implied in fact) or in equity (unjust enrichment) requires a fully developed factual record. Accordingly, it would be premature to dismiss the unjust enrichment claim.

WHEREFORE, the Court recommends that Defendant's Motion to Dismiss be granted in part and denied in part (d/e 39). The Court recommends dismissal of Plaintiffs' claim for conversion (Count II of the First Amended Complaint). The Court further recommends that Defendant's motion to dismiss be denied in all other respects.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.

  ENTER: May 27, 2008

              *s/ Byron G. Cudmore*
            _____
              BYRON G. CUDMORE
            UNITED STATES MAGISTRATE JUDGE